Frederick H. Shull, Jr.
10697 W Centennial Parkway, APT#1079
Las Vegas, NV 89166
Phone: (702) 954-0565
Voicemail: (504) 814-0275
Email: Derick.Shull@gmail.com



___ FILED          ___ RECEIVED
___ ENTERED        ___ SERVED ON
          COUNSEL/PARTIES OF RECORD

NOV - 5 2018

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

FREDERICK H. SHULL, JR., pro se     |
                                    |
                Plaintiff,          |
                                    |     CASE NO.: 2:18-cv-01781-APG-PAL
vs.                                 |
                                    |
THE UNIVERSITY OF QUEENSLAND, and | 
THE OCHSNER MEDICAL GROUP, and      |
GEOFF McCOLL, and                   |     **COMPLAINT**
LEONARDO SEOANE, and                |
GREGORY McGHEE, in his individual   |
as well as official capacities, and, |
THE U.S. DEPARTMENT OF EDUCATION, |
and DOES 1-50,                      |     JURY DEMAND
                                    |
                Defendants.         |
_____|

I, Frederick H. Shull, Jr., plaintiff, pro se, for this complaint against all

defendants, allege and state as follows:

### I. INTRODUCTION

This is a suit for damages arising from defendants' practices in violation of

common law and statutes, including, Title VI of the Civil Rights Act of 1964, 42

U.S.C. §§ 1983 and 1988, 42 U.S.C. § 2000(d), 45 CFR § 80 et seq., and NRS §

598 et seq. (Deceptive Trade Practices), including policy and procedure failures,

ratification, breach of contract, negligence, fraud, RICO violations under 18

U.S.C. § 2 and 18 U.S.C. § 1962, and defamation.

These activities and practices of the University of Queensland - School of

Medicine (UQSOM) and the Ochsner Medical Group (OMG), herein collectively

named the "UQ-Ochsner" Enterprise, the U.S. Department of Education (DOE),

the named individual defendants, Geoff McColl, the Executive Dean of the

UQSOM, Leonardo Seoane, UQSOM Faculty and UQ-Ochsner Administrator,

Gregory McGhee, Program Manager of the Dallas Branch of the DOE's Office of

Civil Rights (OCR), and Does 1-50, both as principles and also on behalf of and

as agents of each other, through individual and coordinated actions, omissions,

practices, and ratifications, have acted and conspired in a scheme to discriminate

against me on the basis of my national origin in violation of 42 U.S.C. § 2000(d),

including but not limited to their mutual and ongoing practices in furtherance of a

contract for educational services which places different and less favorable

requirements upon me, and all other U.S.-Nationals in the U.S.-National only UQ-

Ochsner program, than any other student at the University of Queensland's

Medical School.

## II. JURISDICTION

1.      This court has subject matter jurisdiction of this action pursuant to 28

U.S.C. §§ 1331, 28 U.S.C. §§ 1343(a)(3), 42 U.S.C. § 12188(a)(1), because this

action alleges violations of the Racketeer Influenced Corrupt Organizations Act

(RICO), 18 U.S.C. § 1964(c), and also, other Federal questions under 28 U.S.C.

§§ 1346(b), and 2671-2680, and 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. §

2000(d).

2.      This Court also has jurisdiction by diversity of citizenship pursuant to 28

U.S.C. §§ 1332. I am a student who resides in Las Vegas, Nevada. I am a

permanent resident of the State of Indiana. I am a natural born U.S. citizen.  My

damages (including but not limited to: tuition, interest, compound interest, living

expenses, lost wages, lifetime lost income, and opportunity costs) exceed

$300,000. The defendant's penultimate activities precipitating this legal action

occurred when I received their official letters at my residence in Las Vegas,

Nevada.

3.      Supplemental jurisdiction of violations of state law exist under 28 U.S.C. §

1367 and includes, specifically, NRS § 207.470(3).

### III. VENUE

4.      Venue is proper under 18 U.S.C. § 1965 and also via 28 U.S.C. § 1391

(a)–(g) because, inter alia, I reside in Las Vegas, Nevada, and defendants are

either government officials (e)(1)(c), or are without residence in the United States

(c)(3), or, are subject to personal jurisdiction in Nevada at the time this action

commenced (d), because they are principles or agents involved in the violations

giving rise to the factual basis upon which this case arises who themselves

reside not in Nevada, but in Louisiana, Texas, or elsewhere in the United States.

### IV. PARTIES

5.      Frederick H. Shull, Jr., plaintiff, pro se.  I am a 40 year old natural born

U.S. citizen and former student of the University of Queensland School of

Medicine's UQ-Ochsner program. I entered into and relied to my detriment upon

a contract for educational services in which I relied, in good faith, upon UQ's

promises it was in compliance with, and took reasonable measures to ensure its

compliance with, 42 U.S.C. § 2000(d). I entered into said contract with the

defendants while I resided in Indianapolis, Indiana. This dynamic contractual

relationship is, at present and always has been, continuous and ongoing. I was

awarded a diploma from the UQSOM, a Bachelor of Science in Medical Studies,

which was not the diploma I agreed to in my contract with the defendants, on or

about December 13th, 2016. But for, including but not limited to, the defendants'

negligence, misrepresentation, and nonperformance of 42 U.S.C. § 2000(d), and

other practices in furtherance of discrimination solely on the basis of national

origin, I would have completed the clinical years of my medical studies in

Australia, pursued professional licensure in Australia, and would now be licensed

to practice medicine in Australia under the MBBS, Bachelor of Medicine Bachelor

of Surgery, diploma which would have been awarded me by the UQSOM.

6.      The U.S. Department of Education (DOE), defendant, has provided UQ in

excess of approximately one billion dollars in Federal financial assistance (FFA).

The DOE, at all times relevant to this complaint, has purported to hold recipients

of the DOE's FFA to contractual duties, including but not limited to, compliance

with Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1988, and 42

U.S.C. § 2000(d). I relied in good faith upon the DOE's purported enforcement

and implementation of the terms of the contract, both express and implied,

underlying my over $300,000 in student loan debt, acquired via my contract for

educational services with the defendants.

7.      Gregory McGhee, defendant, is the DOE Office of Civil Rights (OCR) Dallas Branch program manager. McGhee, alone or in collaboration with as yet unidentified DOE defendant Does, authored and transmitted, under color of law, a letter to me in which he denied both that the OMG received FFA from the DOE, as well as the DOE's jurisdiction over my claim of discrimination based on national origin.

7.1.    This official and final DOE OCR denial letter made no reference to UQ receiving DOE FFA or OMG being a secondary recipient of DOE FFA under a program funded with FFA monies. These DOE OCR practices by McGhee and Does occurred despite the defendants' possessing (via my complaint, filed by email to: ocr@edu.gov, on Friday, August, 24th, 2018) both my description of: UQ's role as a partner of OMG, and, as a recipient of DOE FFA — as evidenced on page 2 of the complaint's attached "Inspector General's Complaint Form," where I hand-wrote UQ's "OPE-ID# 01069200."

7.2.    The test to determine if an individual is an employee of the government is the "right to control the details of the day-today performance of duty" of the employee. United States v. Orleans, 425 U.S. 807 (1976); Logue v. United States, 412 U.S. 521 (1973).

7.3.    The test to determine if an act is within an employee's scope of employment involves determining whether it is reasonably necessary to accomplish the purpose of his employment and in furtherance of the master's business. Adams v. South Carolina Power Co., 200 S.C. 438, 21 S.E.2d 17

(1942); Morris v. Mooney, 288 S.C. 447, 343 S.E.2d 442 (1986); Wade v. Berkeley County, 330 S.C. 311, 498 S.E.2d 684 (Ct. App. 1998).

7.4.    If a federal employee commits an intentional tort… the employee has acted outside the scope of his employment and not in furtherance of his master's business. Thigpen v. United States, 618 F.Supp. 239 (D.S.C. 1985), aff'd, 800 F.2d 393 (4th Cir. 1986).

7.5.    Standards of Ethical Conduct for Employees of the Executive Branch are listed in, including but not limited to, 5 C.F.R. Part 2635 as amended at 81 FR 81641 (effective January 1, 2017).

8.    The University of Queensland (UQ) via UQ's School of Medicine (UQSOM), defendant, is an internationally recognized institute of higher learning based in Brisbane, Australia.

8.1.    The UQSOM actively solicits US-National student applicants to its UQ-Ochsner program via, including but not limited to, its website.  I learned of UQ, while living in Indianapolis, Indiana, via UQ's web presence.

8.2.    UQ is the direct recipient of more than approximately one billion U.S. dollars worth of federal financial assistance via the DOE.

8.3.    I entered into a contract for educational services with UQSOM because the defendants purported it to be in compliance with, including but not limited to, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. § 2000(d).

9.    The Ochsner Medical Group (Ochsner), defendant, is a not for profit hospital and medical services group based in New Orleans, Louisiana.

9.1.    Ochsner markets itself as a national and international hospital.

9.2.    Ochsner actively solicits potential patients and clients consider its services via, including but not limited to, its website.

9.3.    Ochsner actively solicits potential patients and clients in each and every State of the United States.

9.4.    Ochsner actively solicits potential patients and clients in Nevada.

9.5.    Ochsner is a recipient of Health and Human Services Administration (HHSA) FFA.

9.6.    HHSA FFA carries the same obligations, under 42 U.S.C. § 2000(d), as are present for program recipients of DOE FFA.

9.7.    Ochsner is a secondary recipient of DOE FFA, via its partnership agreement with the UQSOM, as the UQ-Ochsner Enterprise.

9.8.    Under the UQ-Ochsner partnership, UQ offloads offshore all of its U.S.-National only, and only UQSOM's UQ-Ochsner U.S.-National student-victims, by forcing each and every one to complete their final 2 years (~100% of the total clinical medical education) of the UQSOM MBBS program at Ochsner.

10.    The UQ-Ochsner Enterprise (UQ-Ochsner), defendant, is the entity created by the UQSOM and Ochsner, in furtherance of a medical education scheme intended to discriminate against U.S.-Nationals solely on the basis of their national origin, by placing unequal and less favorable restrictions upon these U.S.-National UQ-Ochsner student-victims than any other student of any nationality enrolled at the UQSOM.

10.1.    UQ-Ochsner's discriminatory practices include, but are not limited to, an absolute refusal to allow any U.S.-National UQ-Ochsner student-victim to choose to complete the clinical phase of the UQSOM's medical program onshore, in Australia.

10.2.    UQ-Ochsner is the mechanism by which UQSOM discriminates against U.S.-National UQ-Ochsner student-victims solely on the basis of their national origin. For example, rather than randomly assign all UQSOM medical students to rotations at Ochsner, as is done with each and every other clinical site at the UQSOM, in which case all UQSOM students, regardless their national origin, would be equally likely to complete portions of their clinical phase courses at Ochsner — the UQSOM forces U.S.-National UQ-Ochsner student-victims, and only U.S.-National UQ-Ochsner student-victims, to complete approximately 100% of their phase 2 clinical training at Ochsner.

10.3.    UQSOM makes no exceptions to this policy.

10.4.    UQSOM did not make an exception to this policy for me, when I requested UQSOM allow me to complete the remainder of my medical training onshore, in Australia, with each and every other UQSOM student, regardless their national origin.

11.    Geoff McColl, defendant, is the executive Dean of the UQSOM, authorized to speak for the UQSOM and UQ-Ochsner on behalf of those organizations, as he did, along with Leonardo Seoane, concerning these matters, now before the court, in official letters directed to me, personally, via email, and received by me

at my residence, in Las Vegas, Nevada, official letters culminating in the factual basis from which this case arose.

12.     Leonardo Seoane, defendant, is a faculty member of the UQSOM and Ochsner Administrative-Management level employee, authorized to speak for the UQSOM and UQ-Ochsner on behalf of those organizations, as he did, along with Geoff McColl, concerning these matters, now before the court, in official letters directed to me, personally, via email, and received by me at my residence, in Las Vegas, Nevada, official letters culminating in the factual basis from which this case arose.

13.     Does 1-5, defendants, are the persons responsible for founding and implementing the polices and procedures now in place in the UQ-Ochsner program.

14.     Does 6-10, defendants, are UQ employees who are either aware of, or, have knowledge of, or, participated in the decision, to deny my request to complete my MBBS degree onshore, in Australia.

15.     Does 11-15, defendants, are Ochsner employees who are either aware of, or, have knowledge of, or, participated in the decision, to deny my request to complete my MBBS degree onshore, in Australia.

16.     Does 16-20, defendants, are UQSOM key administrative personnel responsible for the operations of the UQ-Ochsner program.

17.     Does 21-25, defendants, are Ochsner key administrative personnel responsible for the operations of the UQ-Ochsner program.

18.     Does 26-30, defendants, are UQSOM employees responsible for ensuring UQ-Ochsner's compliance with Title VI and other contractual terms of the defendants' agreement with the U.S. Department of Education in consideration of defendants' participation as a recipient of FFA.

19.     Does 31-35, defendants, are Ochsner employees responsible for ensuring UQ-Ochsner's compliance with Title VI and other contractual terms of the defendants' agreement with the U.S. Department of Education or the Department of Health and Human Services in consideration of defendants' participation as a recipient of FFA.

20.     Does 36-40, defendants, are U.S. Department of Education employees responsible for that entity's official letter to me, same as below, and, who are also responsible for ensuring UQ-Ochsner's regular and business-as-usual compliance with its obligations arising from its participation in a FFA program.

21.     Does 41-45, defendants, are U.S. Department of Education employees with the Department's Office of Civil Rights who are responsible for the judgments and conclusions represented to me in that entity's official letter, authored by defendant McGhee and directed to me, personally, via post, and received by me at my residence in Las, Vegas, Nevada, an official letter in reply to my petition to the Department concerning the same facts and issues giving rise to this complaint.

22.     Does 46-50, defendants, are U.S. Department of Education employees with the Department's Office of Civil Rights who are responsible for providing the basis of the facts and opinions giving rise to the judgments and conclusions

represented to me in that entity's official letter in reply to my petition to the Department concerning the same facts and issues giving rise to this complaint.

23.     DOE Does: Until Does 36 to 50 are identified, every of the Does, each Doe, 36 through 50, respectively, is named as a defendant, in the Dce's individual or official capacity, respectively, to exactly the same capacity, and for exactly the same causes of action, and for the same reasons, and upon the same factual basis, and upon the same evidence and official DOE letter, as defendant McGhee.

24.     Ochsner Does: Until Does 1-5, 11-15, 21-25, and 31-36, are identified, every of the Does, each Doe, 1-5, 11-15, 21-25, and 31-36, respectively, is named as a defendant for exactly the same causes of action, and for the same reasons, and upon the same factual basis, and upon the same evidence and official UQ-Ochsner letters, as defendant Seoane.

25.     UQ Does: Until Does 1-5, 6-10, 16-20, and 26-30, are identified, every of the Does, each Doe, 1-5, 6-10, 16-20, and 26-30, respectively, is named as a defendant for exactly the same causes of action, and for the same reasons, and upon the same factual basis, and upon the same evidence and official UQ-Ochsner letters, as defendant McColl.

26.     McGhee and Does 36-50, U.S. federal employees all, are sued in both their individual and official capacities.

27.     Both Seoane and McColl, as well as Does 1-35, appear to have been acting within the scope of their employers' policies, respectively, except as to those actions, under color of law, which perhaps cannot, as a matter of law, be

within the scope of their employment. As to these actions, it is my understanding that under Nevada law there exists the sole actor rule, which imputes an agent's actions to the principal corporation "even if the agent totally abandons the corporation's interest" when "the corporation and its agent are indistinguishable from each other." See Glenbrook Capital Ltd. P'ship v. Dodds (In re Amerco Derivative Litig.), 252 P.3d 681, 695–96 (Nev. 2011). Therefore, in counts 1 - 21, below, when I name an individual defendant, I intend also to implicitly incorporate the names of each and every Doe associated with the named defendant, as detailed above in statements 23 - 25, and, in so naming, I also intend to impute liability for any and all of Seoane's and McColl's and Does' actions upon the UQ-Ochsner Enterprise via the sole actor rule.

## V. PLAINTIFF'S STATEMENT

28.     When I was accepted into the University of Queensland, and its Ochsner program: two years in Brisbane, Australia, and, then, two years in New Orleans, Louisiana, and, then, I get a medical degree — I was thrilled.

29.     While I was in the program, I struggled.  I was probably near the dead bottom of the class (not counting those who left or failed out).  But, I passed, everything, for the first two years.  Even the little weeklong clinical courses and such, for which, although not the highest hurdle, the School made no accommodations for study abroad students.  Student who, if they failed to pass these speed bumps, would nevertheless be barred from taking subsequent classes, for a calendar year, until they had another chance to pass.  Bad enough

for the Aussies, but for a study abroad student, it would also mean loosing your student visa, and entailed sequelae.

30.     Another aspect of UQ's Ochsner program, perhaps even worse, because instead of refuse to provide an additional accommodation to study abroad students, it actually discriminated against them, solely on their being "Ochsner" students, because of their national origin.  Although Australian Universities have no legal basis to make continued enrollment contingent on the United States Medical Licensing Exam (USMLE), they, of course, have their own licensing scheme, Ochsner students were not allowed to continue through their final two years of clinical rotations unless they attempted and passed the USMLE 1 and, later, the USMLE 2.

31.     This would be like, if Tulane Medical School started a program and policy, only for Australian study abroad students, which completely disregarded the USMLE and instead made progress through the clinical years, for only those Australian students, contingent on the licensing requirements of another country.

32.     Even though the USMLE and Australian licensing schemes have significant differences, and UQ -Ochsner knew I'd been struggling to keep up in the classes, which, of course, focused solely on topics relevant to Australian licensure, I was forced out because I didn't take the USMLE and wasn't given the choice to complete my clinical rotations in Australia.  I wonder, if treated equally, how many Australian medical students would also have been forced out, if their enrollment also had been contingent on the USMLE?  Or, for that matter, how students at Tulane Medical School would fare if, instead of the USMLE, their final

two years enrollment were contingent on passing the licensing exams from some other country, like Australia.

33.     If I'd been treated equally, without regard to my national origin, I'd have been given the chance to complete my clinical years in Australia, just like every non-Ochsner student.

34.     If given the chance, I'd have stayed, and, since I'd been trained for it, I'd have struggled my way through the rest of the degree.  Then, after I had a medical degree, if I wanted to practice in the United States, I could have pursued the USMLE at that later time, at my own pace, when I'd perhaps had more reasonable opportunity to prepare for it.  And, if I'd chosen never to do the USMLE or practice in the United States, it would have been my choice, and I'd still have received the medical degree and all the opportunities it would have brought in Australia.

35.     Instead, I was forced out.  I was never given the chance to complete the degree in Australia.  If I had been given the opportunity to complete my medical rotations in Australia instead of New Orleans, Louisiana, I would have chosen to remain in Australia.

36.     I should have been given this choice.  It was unfair and discriminatory to force me to comply with a different standard than the non-Ochsner students. More so, considering Australian based UQ-Ochsner had no authority to make continued enrollment contingent on the licensing exams of another country.  Yet, on top of all this, although UQ-Ochsner knew I was struggling, and that the USMLE is markedly different from Australian licensing, I was forced to meet this

alternative standard, one the UQ-Ochsner curriculum had not adequately prepared me for. Whereas, if I had been treated equally, I would have stayed, and would have continued with the clinical rotations and licensing exams the UQ-Ochsner program had actually prepared me for.

37.     I would have passed. I would have received a medical degree instead of a valueless medical studies diploma. But, that's not all UQ-Ochsner left me with, I'm also liable for hundreds of thousands of dollars in student loan debt. Debt I'll never be able to pay off, because I wasn't given an equal chance to complete the degree that would have allowed me the income to do so.

## VI. FACTUAL ALLEGATIONS

38.     I hereby incorporate the foregoing statements into these factual allegations as if repeated hereinafter verbatim.

39.     Defendants promised me that if I completed their program, I would be awarded an MBBS, and with it all the privileges and opportunities and financial gains reasonably expected as a doctor and member of the medical profession.

40.     Defendants promised me they took reasonable steps to comply with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

41.     Defendants promised me they were in compliance and would comply, at all times, with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

42.     Defendants promised me they would take reasonable steps to comply with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

43.     When I contracted for educational services with the defendants, I chose to attend the defendants' medical school program instead of and to the exclusion of attending medical school at Saint George's medical school in Grenada, a program to which I had also been accepted.

44.     To the best of my knowledge, Saint George's medical school is also a DOE FFA program recipient.

45.     To the best of my knowledge, Saint George's medical school does not discriminate against U.S.-Nationals on the basis of their national origin.

46.     I allege I have exercised reasonable due diligence under the circumstances of this case, and continue to do so as I now attempt to determine whether, as a matter of law, and, despite the defendants' authoritative representations to the contrary, the defendants' actions on the basis of national origin are actually factual conclusions of law which give rise to a cause of action under 42 U.S.C. § 2000(d).

47.     Before recently discovering the DOE's Borrower Repayment Defense program and learning that the defendants' actions might have been injurious to me, rather than neutral and benign, as the defendants' profess and have led me to believe, I was unaware of or misled as to these crucial facts concerning the nature of the defendants' actions and assertions.

48.    Prior to October 22nd, 2014, and at all times relevant to this complaint, I relied on authoritative statements by the defendants that misled me about the nature of my rights.

49.    Prior to October 22nd, 2014, and at all times relevant to this complaint, I relied on the defendants representations that: before UQ-Ochsner began operating, they took reasonable steps to ensure its operations would comply with DOE regulations, specifically 42 U.S.C. § 2000(d).

50.    Prior to October 22nd, 2014, and at all times relevant to this complaint, I relied on the defendants representations that: during UQ-Ochsner's operations, they took reasonable steps to ensure its operations would comply with DOE regulations, specifically 42 U.S.C. § 2000(d).

51.    I allege that prior to October 22nd, 2014, and at all times relevant to this complaint, when I relied on the defendants representations that they took reasonable steps to ensure UQ-Ochsner's operations would comply with DOE regulations, specifically 42 U.S.C. § 2000(d), that these reasonable steps must have necessarily included obtaining a declaratory judgment as to UQ-Ochsner's compliance with 42 U.S.C. § 2000(d) given its unique and peculiar actions toward US-Nationals on the basis of their national origin.

52.    From October 22nd, 2014, to December 13th, 2016, and at all times relevant to this complaint, I relied on authoritative statements by the defendants that misled me about the nature of my rights.

53.    At all times prior to Monday, July 30th, 2018, at 1:34PM, and at all times relevant to this complaint, I relied on authoritative statements, practices,

activities, and representations by the defendants which misled me about the nature of my rights.

54.    On Monday, July 30th, 2018, at 1:34PM, acting on information obtained only days prior, as evidenced in attached exhibits, redacted, I emailed the U.S. Department of Education and began my application for Borrower Defense to Repayment against UQ-Ochsner.

55.    On or about August 1st, 2018, I mailed and emailed a completed application for Borrower Defense to Repayment against UQ-Ochsner to the U.S. Department of Education.

56.    At all times subsequent to on or about Monday, July 30th, 2018, at 1:34PM, and at all times thereafter and relevant to this complaint, I relied on newly discovered information concerning the U.S. Department of Education's Borrower Defense to Repayment program and further information obtained thereafter, in light of which I now dispute the defendants' authoritative representations concerning UQ-Ochsner's DOE FFA compliance and now believe those representations were made to misled me about the nature of my rights.

57.    I believe that prior to Monday, July 30th, 2018, at 1:34PM, and at all times relevant to this complaint, my reliance upon the defendants' authoritative statements concerning their discriminatory program was reasonable, as evidenced by the fact that I now testify, herein, that: to the best of my knowledge and recollection, and, upon a search as thorough as I am capable, since approximately 2009, no other similarly situated person has ever filed any

complaint or legal action against UQ-Ochsner concerning these discriminatory actions, practices, and policies in furtherance of the UQ-Ochsner Enterprise.

58.    To the best of my knowledge and recollection, and, upon a search as thorough as I am capable, since approximately 2009, every single similarly situated U.S.-National UQ-Ochsner student-victim has relied upon the UQ-Ochsner Enterprises' authoritative representations concerning its discriminatory program. Thus, I believe my actions in reliance upon UQ-Ochsner's authoritative representations about the nature of my rights were reasonable and exercised with due diligence.

59.    UQ-Ochsner is a Title VI recipient who subjected me to a contract and pattern of practices which discriminated against me on the basis of my national origin.

60.    The University of Queensland ("UQ") is an Australian University based in Brisbane, Australia.

61.    UQ operates a website with specific offerings directed toward persons whose national origin is from the United States (NOUS).

62.    One of UQ's NOUS offerings is the Ochsner Program offered via UQ's Medical School (OPM).

63.    I received a degree in Medical Studies from the University of Queensland's Medical School on or about December 13th, 2016.

64.    A degree in Medical Studies is not a medical degree.

65.    A degree in Medical Studies does not afford me the same licensing

opportunities or otherwise as the medical degree I entered the UQ-Ochsner

program to obtain.

66.    Sometime prior to December 13th, 2016, I was accepted into the UQ-

Ochsner program to pursue an MBBS (the Australian equivalent of an MD in the

United States).

67.    I signed numerous forms, now in the sole possession of UQ-Ochsner,

which detailed in writing UQ-Ochsner's status as a program receiving funds via

the United States Department of Education's Federal Student Financial

Assistance Program.

68.    I signed numerous forms, now in the sole possession of UQ-Ochsner,

detailing our contractual obligations.

69.    I signed one or more forms, now in the sole possession of UQ-Ochsner,

describing how my status with UQ-Ochsner differed from other students solely on

the basis of my national origin.

70.    I signed one or more forms, now in the sole possession of UQ-Ochsner,

describing how I would be forced, without exception, to attend the clinical years

of my medical school training at the Ochsner Hospital in New Orleans, Louisiana.

71.    I signed one or more forms, now in the sole possession of UQ-Ochsner,

describing how I would be forced, without exception, to complete the USMLE in

order to obtain my degree.

72.     The national origins of other students in my class at UQ included: Australians, Native Australians, New Zealanders, Chinese, Singaporeans, Vietnamese, Canadians, and Russians.

73.     Only Americans from the United States were forced to attend their clinical years at Ochsner and complete the USLME.

74.     Every other student in my medical school class had the option of attending Ochsner for some of their rotations, but not the obligation to do so.

75.     Every other student in my medical school class was required to complete Australian licensure requirements and none were required to complete United States Medical Licensure Exam (USMLE) requirements.

76.     These differences between mandatory versus optional rotations at Ochsner and mandatory versus optional completion of the USMLE, were based solely on national origin.

77.     If I had the option of completing my rotations in Australia, I would have stayed in Australia.

78.     If I had the option of completing the Australian licensing exam and not the USMLE, I would have opted only to complete the Australian licensing exam.

79.     If I had completed my rotations in Australia and completed the Australian licensing exam, I would have completed the entire medical degree program and been awarded an MBBS.

80.     UQ does not offer any official study courses to prepare for the USMLE.

81.     The USMLE and the Australian licensing exams do not cover the same material or with the same emphasis.

82.    There are significant differences between the USMLE and Australian licensing exam.

83.    I believe Ochsner receives Federal assistance through the Department of Health and Human Services.

84.    There are significant differences between rotations taken at Ochsner and rotations taken in Australia.

85.    OPM made no exceptions whatsoever to allow persons of United States origin to complete their rotations and licensing exams in Australia:

86.    I requested to stay in Australia and complete the Australian licensing exams during an interview with the Assistant Dean of the UQ Medical School, and I was denied.

87.    These events have caused significant damage to my reputation and earnings potential.

88.    I have student loan debt well in excess of $300,000 as a direct result of OPM's practices.

89.    Defendants' pattern of practices have persisted more than 5 years, having begun, to the best of my knowledge, approximately 2009, and were ongoing and consisted of many more than two acts during the years I was a student in the U.S.-National only UQ-Ochsner program.

90.    In all of this, all the defendants, each and every defendant, has acted under color of law by purporting to act in compliance with DOE FFA statutes and regulations.

91.    I allege the contents of defendant McGhee's DOE OCR official letter to me evidence an unreasonably sub-minimal effort at those duties of his employment related to the circumstances of this case under, 42 U.S.C. § 2000(d).

92.    I allege the contents of defendant Seoane's and McColl's official letters to me evidence an unreasonably sub-minimal effort at those duties of their employment related to the circumstances of this case under, 42 U.S.C. § 2000(d).

93.    I now specifically allege, herein, that: an unlawful act is done with unlawful intent.

94.    I hereby recognize the following groups of defendants and make specific allegations, as follows:

94.1.**UQ-Ochsner**: UQ, Ochsner, and the UQ-Ochsner Enterprise.

94.1.1. I assert promissory estoppel, below, against UQ-Ochsner exclusively, as indicated in the cause of action (COA)'s caption.

94.1.2. UQ-Ochsner is the only named defendant for COA 3 and COA 6.

94.1.3. As to all other COAs, below, there are no exceptions to the following Group A, Group B, distinction.

94.2.    **Group A defendants**: includes all private entities in UQ-Ochsner, as well as all agents of those entities, and also all agents of federal agencies acting in their individual capacities (i.e. behaving in a manner no reasonable officer could believe lawful in light of clearly established law and the information in the individual capacity defendant's possession), as listed:

**94.2.1. UQ-Ochsner**

**94.2.2. Named individual defendant-agents of private entities: Seoane, McColl.**

94.2.2.1.1.I allege these defendants did not obtain a declaratory judgment establishing their compliance with DOE FFA before UQ-Ochsner began operations.

94.2.2.1.2. I allege these defendants have not obtained a declaratory judgment establishing their compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.2.1.3. I allege these defendants did not obtain a declaratory judgment establishing their compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

94.2.2.1.4. I allege these defendants have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.2.1.5. I allege these defendants have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

**94.2.3. Named individual defendant-agent(s) of a Federal agency: McGhee in his individual capacity.**

94.2.3.1.1. I allege McGhee has not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because McGhee knew they were not in compliance.

94.2.3.1.2. I allege behaving in this manner, as above, the practices of McGhee are such that no reasonable officer could believe these practices lawful in light of clearly established law and the information in McGhee's possession.

94.2.3.1.3. I offer defendant McGhee's DOE OCR denial letter as direct evidence of McGhee's unreasonable efforts and infer this presumably unlawful act was done with unlawful intent.

**94.2.4. Unnamed individual defendant-agents of private entities:**

**94.2.4.1. Does 1-5 (UQ-Ochsner Founders)**

94.2.4.1.1. I allege these Does did not obtain a declaratory judgment establishing their compliance with DOE FFA before UQ-Ochsner began operations.

94.2.4.1.2. I allege these Does have not obtained a declaratory judgment establishing their compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.1.3. I allege these Does did not obtain a declaratory judgment establishing their compliance with DOE FFA or HHSA

FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

94.2.4.1.4. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.1.5. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.2. Does 6-10 (UQ Employees - Denied Onshore Right)

94.2.4.2.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.2.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.3. Does 11-15 (Ochsner Employees - Denied Onshore Right)

94.2.4.3.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.3.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA

during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.4. Does 16-20 (UQSOM UQ-Ochsner Admin)

94.2.4.4.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.4.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.5. Does 21-25 (Ochsner UQ-Ochsner Admin)

94.2.4.5.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.5.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.6. Does 26-30 (UQSOM Title VI Compliance Employees)

94.2.4.6.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.6.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.4.7. Does 31-35 (Ochsner Compliance Employees)

94.2.4.7.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.2.4.7.2. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

### 94.2.5. Unnamed individual defendant-agent(s) of a Federal agency in individual capacity:

### 94.2.5.1. Does 36-40 (DOE Employees UQ-Ochsner Compliance)

94.2.5.1.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

94.2.5.1.2. I allege behaving in this manner, as above, the practices of these Does are such that no reasonable officer could believe these practices lawful in light of clearly established law and the information in the Doe's possession.

94.2.5.1.3. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts and infer this presumably unlawful act was done with unlawful intent.

**94.2.5.2. Does 41-45 (DOE OCR Letter Writer Decision Makers)**

94.2.5.2.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

94.2.5.2.2. I allege behaving in this manner, as above, the practices of these Does are such that no reasonable officer could believe these practices lawful in light of clearly established law and the information in the Doe's possession.

94.2.5.2.3. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts and infer this presumably unlawful act was done with unlawful intent.

**94.2.5.3. Does 46-50 (DOE OCR Letter Opinion Influencers)**

94.2.5.3.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009, because they knew they were not in compliance.

94.2.5.3.2.I allege behaving in this manner, as above, the practices of these Does are such that no reasonable officer could believe

these practices lawful in light of clearly established law and the information in the Doe's possession.

94.2.5.3.3. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts and infer this presumably unlawful act was done with unlawful intent.

94.3.   **Group B defendants**: includes Federal government agencies as well as all agents of those entities acting in their official capacity, as listed:

**94.3.1. The U.S. Dept. of Education and the U.S. Health and Human Services Administration**

**94.3.2. Unnamed individual defendant-agents of a Federal agency in official capacity:**

**94.3.2.1. Does 36-40 (DOE Employees UQ-Ochsner Compliance)**

94.3.2.1.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.3.2.1.2. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts.

**94.3.2.2. Does 41-45 (DOE OCR Letter Writer Decision Makers)**

94.3.2.2.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.3.2.2.2. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts

### 94.3.2.3. Does 46-50 (DOE OCR Letter Opinion Influencers)

94.3.2.3.1. I allege these Does have not made reasonable efforts to establish UQ-Ochsner's compliance with DOE FFA or HHSA FFA during UQ-Ochsner's ongoing operations, since on or about 2009.

94.3.2.3.2. I offer defendant McGhee's DOE OCR denial letter as direct evidence of the Does unreasonable efforts

95.     I hereby incorporate into this complaint, by reference, herein, all attachments, articles, documents, and evidence included with this complaint.

96.     I hereby incorporate by reference, herein, all documents, exhibits, attachments, and articles, and all items otherwise unaccounted for, as previously submitted or docketed with this court under this action's case number: 2:18-cv-01781-APG-PAL.

97.     I hereby incorporate by reference all statements, above and, all articles incorporated into those statements, herein, as if repeated hereinafter verbatim, and, I now submit all this as evidence of each and every allegation I have made, above, and each and every allegation, below.

98.     I now further allege, as follows:

99.     Defendants' practices and activities, as herein alleged, are in violation of not only federal anti-discrimination laws, but also the antidiscrimination State laws of: Indiana, Louisiana, Texas, and Nevada.

100.    Group B defendants, as representatives, agents, or branches of the United States, are not sued for punitive damages but are sued for prospective

injunctive relief, even when listed under a COA alongside Group A defendants, whom are always sued for punitive damages when such damages are allowed.

101.    Where I have pled a COA and have named more than one legal theory or statute or act as a basis for the COA in the COA's caption, it is because I believe these bases arise from the same factual nexus, speak to the same damage, seek the same recovery, or seek recovery on the same grounds, and, therefore, in the interests of clarity and brevity, I argue them in the alternative, as follows:

## VII. COUNTS

### COUNT 1 : DECLARATORY JUDGMENT
### 28 U.S.C. §§ 2201-2202, or,
### NEVADA UNIFORM DECLARATORY JUDGMENTS ACT
### (All Group A and All Group B defendants)

102.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

103.    An actual, ripe, and justiciable case or controversy exists between the defendants and myself concerning the defendant's misrepresentations, omissions, negligence, gross negligence, and breaches of contract, and the rights and responsibilities of the parties herein.

104.    Because of defendants' wrongful conduct, I face the prospect of future monetary harm.  Such future harm includes, but are not limited to, the compounding interest upon my UQ-Ochsner contract's debt, ongoing damage to my reputation, other continuing student debt obligations, and future loss of income, future loss of opportunity, and loss of future lifetime earnings.

105.    Therefore, I am entitled to a judgment, under federal statute or Nevada's Uniform Declaratory Judgments Act, that defendants are liable to me for any and

all damages I suffer in the future resulting from defendants' ongoing practices or activities or ratification of such which discriminate against me on the basis of my national origin in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983 or 1988, or 42 U.S.C. § 2000(d).

### COUNT 2 : VIOLATION OF SECTION 601 OF TITLE VI, CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(d), as implemented at 34 CFR § 100.3(b) et seq. (All Group A and All Group B defendants)

106.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

107.    By being denied clinical phase rotation opportunities and by being forced to pursue U.S. licensure instead of given the option to pursue Australian licensure because of my national origin, I was treated less favorably than my non-U.S.-National counterparts in violation of 42 U.S.C. § 2000(d).

108.    Defendants Ochsner and UQ-Ochsner have acted negligently or intentionally, and without justification to deprive me of rights, privileges and immunities secured by the laws of the United States, including my right to be free from discrimination on the basis of my national origin in programs or activities receiving federal financial assistance.

109.    Each defendant, despite knowledge and adequate opportunity to learn of the misconduct of their co-defendants, or agents, or employees, have adopted, approved, and ratified the acts, omissions, and misconduct of each of their co-defendants and, if applicable, of each of their co-defendants' agents or employees.

110.    Defendants' acts or defendants' ratification of such were negligent or intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of my rights, as secured by Title VI when defendants denied me, and all other similarly situated U.S.-National U.Q.-Ochsner student-victims, the opportunity to complete the MBBS degree in Australia, which was:

110.1. Denial of a service, financial aid, or other benefit provided under the program;

110.2. Providing a service, financial aid, or other benefit to me which is different, or is provided in a different manner, from that provided to others under the program;

110.3. Restricting me, in any way, in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program;

110.4. Treating me differently from others in determining whether I satisfied any admission, enrollment, quota, eligibility, membership or other requirement or condition which individuals must meet in order to be provided any service, financial aid, or other benefit provided under the program; and,

110.5. Denying me an opportunity to participate in the program through the provision of services or otherwise or afford me an opportunity to do so which is different from that afforded others under the program.

111.    As a direct and proximate result of the actions described above, I sustained harms which include, but are not limited to, my UQ-Ochsner contractual debt, the compounding interest upon my UQ-Ochsner contractual

debt, damage to my reputation via defendants' publication of official records,

other student debt obligations, and loss of income, loss of opportunity, and loss

of lifetime earnings in an amount to be ascertained according to proof at trial.

112.    The defendants' actions as described above were negligent or intentional

and embarked upon with the knowledge of or in conscious disregard of the harm

that would be inflicted upon me.

113.    As a result of defendants' intentional conduct, I am entitled to punitive

damages, as 28 U.S.C. § 2674 allows, in an amount sufficient to punish

defendants and to deter others from like conduct.

### COUNT 3 : VIOLATION OF SECTION 601 OF TITLE VI, CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000(d), and its implementing regulations at 45 C.F.R. Part 80 (UQ-Ochsner: UQ and Ochsner)

114.    I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

115.    I allege both Ochsner and UQ receive HHSA funding via FFA programs.

116.    By being denied clinical phase rotation opportunities and by being forced

to pursue U.S. licensure instead of given the option to pursue Australian

licensure because of my national origin, I was treated less favorably than my

non-U.S.-National counterparts in violation of 42 U.S.C. § 2000(d).

117.    Defendants Ochsner and UQ-Ochsner have acted negligently or

intentionally, and without justification acted to deprive me of rights, privileges and

immunities secured by the laws of the United States, including my right to be free

from discrimination on the basis of my national origin in programs or activities

receiving federal financial assistance.

118.    Ochsner and UQ-Ochsner, despite knowledge and adequate opportunity to learn of the misconduct of their co-defendants, or agents, or employees, have adopted, approved, and ratified the acts, omissions, and misconduct of each of their co-defendants and, if applicable, of each their co-defendants' agents or employees.

119.    Defendants' acts or defendants' ratification of such was negligent or intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of my rights, as secured by Title VI when defendant denied me, and all other similarly situated U.S.-National U.Q.-Ochsner student-victims, the opportunity to complete a MBBS degree in Australia, which was:

119.1. Denial of a service, financial aid, or other benefit provided under the program;

119.2. Providing a service, financial aid, or other benefit to me which is different, or is provided in a different manner, from that provided to others under the program;

119.3. Restricting me, in any way, in the enjoyment of any advantage or privilege enjoyed by others receiving any service, financial aid, or other benefit under the program;

119.4. Treating me differently from others in determining whether I satisfied any admission, enrollment, quota, eligibility, membership or other requirement or condition which individuals must meet in order to be provided any service, financial aid, or other benefit provided under the program; and,

119.5. Denying me an opportunity to participate in the program through the

provision of services or otherwise or afford me an opportunity to do so which

is different from that afforded others under the program.

120.    As a direct and proximate result of the actions described above, I

sustained harms which include, but are not limited to, my UQ-Ochsner

contractual debt, the compounding interest upon my UQ-Ochsner contractual

debt, damage to my reputation via defendants' publication of official records,

other student debt obligations, and loss of income, loss of opportunity, and loss

of lifetime earnings in an amount to be ascertained according to proof at trial.

121.    The defendants' actions as described above were negligent or intentional

and embarked upon with the knowledge of or in conscious disregard of the harm

that would be inflicted upon me.

122.    As a result of defendants' intentional conduct, I am entitled to punitive

damages in an amount sufficient to punish defendants and to deter others from

like conduct.

### COUNT 4 : VIOLATION OF CONSTITUTIONAL RIGHT
### TO EQUAL PROTECTION via 42 U.S.C. § 1983
### (All Group A and All Group B defendants)

123.    I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

124.    The actions of defendants, as described above, violate the Equal

Protection Clause of the Fourteenth Amendment of the United States

Constitution in that such actions are not inflicted upon non-U.S.-Nationals. In all

of this, defendants, and each of them, have, acting under the color of state law,

deprived me of rights, privileges, or immunities secured me by the Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

125.    Defendants McGhee, McColl, and Seoane personally participated in this deprivation of my right to equal protection when they misled me as to the nature of my rights via written correspondence or administered the discriminatory program during my participation in it, respectively.

126.    All acts by all defendants in this deprivation of my right to equal protection were intentional, as evidenced in their personal writings and policies and procedures.

127.    All acts by all defendants in deprivation of my right to equal protection were "under color of law" when the defendants, purporting to act in the performance of official duties, as mandated upon them under Title VI, misled me as to the nature of my rights via, including but not limited to, written correspondence and administration of the discriminatory program during my participation in it.

128.    The practices described above, including, but not limited to, being denied clinical phase rotation opportunities, being forced to pursue U.S. licensure instead of given the option to pursue Australian licensure, being denied the opportunity of an investigation into UQ-Ochsner's practices by Gregory McGhee and the DOE, and being lied to about OMG's status and jurisdiction with regard to the DOE by Gregory McGhee and the DOE, arise from practices not inflicted upon non-U.S.-Nationals enrolled at UQSOM while in the United States, and are therefore violations of equal protection.

129.    As a direct and proximate result of the actions described above, I sustained harms which include, but are not limited to, my UQ-Ochsner contractual debt, the compounding interest upon my UQ-Ochsner contractual debt, damage to my reputation via defendants' publication of official records, other student debt obligations, and loss of income, loss of opportunity, and loss of lifetime earnings in an amount to be ascertained according to proof at trial.

130.    The defendants' actions as described above were negligent or intentional and embarked upon with the knowledge of or in conscious disregard of the harm that would be inflicted upon me.

131.    As a result of defendants' intentional conduct, I am entitled to punitive damages, as 28 U.S.C. § 2674 allows, in an amount sufficient to punish defendants and to deter others from like conduct.

### COUNT 5 : VIOLATION OF CONSTITUTIONAL RIGHT TO SUBSTANTIVE DUE PROCESS via 42 U.S.C. § 1983 (All Group A and All Group B defendants)

132.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

133.    Defendants McGhee, McColl, and Seoane personally participated in this violation of my liberty interest in choosing whether or not to complete my degree onshore via, including but not limited to, misleading me as to the nature of my rights in written correspondence, and administering the discriminatory program during my participation in it.

134.    All acts by all defendants in this violation of my liberty interest in choosing whether or not to complete my degree onshore were intentional, as evidenced in their personal writings and policies and procedures.

135.    All acts by all defendants in violation of my liberty interest in choosing whether or not to complete my degree onshore were "under color of law" when the defendants, purporting to act in the performance of official duties, as described in Title VI, misled me as to the nature of my rights via written correspondence, or administered the discriminatory program during my participation in it.

136.    By their actions as described herein, the defendants, under color of statute, ordinance, regulation, custom, or usage, deprived me of rights, privileges, or immunities secured by the Constitution and laws. In particular, as a participant in the DOE's FASFA program as a student enrolled at UQSOM, if given the opportunity, I had a liberty interest in choosing whether or not to complete my education onshore, in Australia, seeking Australian medical licensure.  The fact I was denied this choice, or the right to declare I had this choice, via acts, omissions, and ratification, demonstrates defendants' violation of my liberty interest in choosing whether or not to complete my degree onshore.

137.    The practices described above, including, but not limited to, being denied the choice whether to complete my degree onshore or not, or the right to declare I had this choice, via acts, omissions, and ratification, demonstrates defendants' violations of my liberty interest, as described above, which were inflicted upon

me and other U.S.-Nationals UQ-Ochsner students, which were not inflicted upon

non-U.S.-National non-UQ-Ochsner students, while attending UQSOM.

138.    Defendants inflicted such practices upon me solely based on my national

origin, as a means of generating income and other benefits for themselves by

forcing the terms of a discriminatory contract upon me, terms based solely on

characteristics of and accruing from the circumstances surrounding my national

origin.

139.    The actions of defendants as described above, including, but not limited

to, denying me the choice whether to complete my degree onshore or not, or the

right to declare I had this choice, are written policies at UQSOM which were

written and adopted by the defendants, to the best of my knowledge, beginning in

2009, except as to Gregory McGhee, acting individually or in his official capacity,

in 2018.

140.    The actions taken, or not taken, in response to defendant UQ-Ochsner's

conduct, policies, and practices by the other defendants, including the DOE and

Gregory McGhee, amounted to the adoption of such practices, customs, or

policies in furtherance of UQ-Ochsner's conduct.

141.    Defendants DOE and Gregory McGhee, knew or should have known

about UQ-Ochsner's discriminatory contractual and other discriminatory practices

with respect to me and other U.S.-National UQ-Ochsner UQSOM students and

former U.S.-National UQ-Ochsner UQSOM students as such discriminatory

contractual and other discriminatory practices are so well settled as to constitute

a custom or usage at UQSOM.  Yet, defendants DOE and Gregory McGhee,

failed to take any affirmative actions to prevent or correct for the discriminatory

contractual and other practices and provide for the well being of U.S.-National

UQ-Ochsner students at the UQSOM.

142.    In all of this, defendants, and each of them, have, acting under the color of

law, deprived me of rights, privileges, or immunities secured to me by the

Constitution and laws of the United States in violation of 42 U.S.C. § 1983.

143.    As a direct and proximate result of the actions described above, I

sustained harms which include, but are not limited to, my UQ-Ochsner

contractual debt, the compounding interest upon my UQ-Ochsner contractual

debt, damage to my reputation via defendants' publication of official records,

other student debt obligations, and loss of income, loss of opportunity, and loss

of lifetime earnings in an amount to be ascertained according to proof at trial.

144.    The defendants' actions as described above were negligent or malicious,

deliberate, intentional and embarked upon with the knowledge of or in conscious

disregard of, the harm that would be inflicted upon me.

145.    As a result of said intentional conduct, I am entitled to punitive damages,

as allowed under 28 U.S.C. § 2674, in an amount sufficient to punish defendants

and to deter others from like conduct.

### COUNT 6 : CLAIM FOR PROMISSORY ESTOPPEL
### (UQ-Ochsner: UQ and Ochsner)

146.    I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

147.    Defendants made a promise to me that if I completed their program, I

would be awarded an MBBS, and with it all the privileges and opportunities and

financial gains reasonably expected as a doctor and member of the medical profession, which defendants should have reasonably expected to induce action in reliance thereof on my part.

148.    Defendants made a promise to me that they had taken reasonable steps to comply with 42 U.S.C. § 2000(d) and would continue to take reasonable steps to comply with 42 U.S.C. § 2000(d), which defendants should have reasonably expected to induce action in reliance thereof on my part.

149.    Obtaining a declaratory judgment to establish compliance with prohibitions against discrimination on the basis of national origin before starting the operations of UQ-Ochsner is a reasonable and necessary step to take to comply with 42 U.S.C. § 2000(d) given the nature of UQ-Ochsner's U.S.-National only UQ-Ochsner policies, procedures, practices, and activities.

150.    My reliance on defendants' promises was reasonable.

151.    The defendants are bound to the promises they made to me.

## COUNT 7: BREACH OF CONTRACT, or, TORTIOUS BREACH OF CONTRACT (All Group A defendants)

152.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

153.    At all times relevant to this complaint, a contract or contractual agreement exists between myself and each of the defendants named in this cause of action.

154.    Under the defendants' agreement with me, defendants UQ, UQSOM, UQ-Ochsner, McColl, Seoane, and McGhee, agreed to abide by the provisions of 42 U.S.C. § 2000(d).

155.    Defendants also were obligated to perform agreed to services and
contractual duties, reasonably, prudently, fairly and in good faith, under the
implied covenant of good faith and fair dealing.

156.    Defendants failed to perform those service and contractual duties properly,
and failed to fulfill their duty of good faith and fair dealing, as described herein in
the foregoing statements.

157.    At all times relevant to this complaint, an implied contract or implied
contractual agreement existed between myself and each of the defendants
named in this cause of action.

158.    Defendants made an implied agreement with me under which defendants
UQ, UQSOM, UQ-Ochsner, McColl, Seoane, and McGhee, agreed to abide by
the provisions of 42 U.S.C. § 2000(d).

159.    The representations, promises, and conduct of defendants were
sufficiently specific so that I had a reasonable expectation that defendants would
abide by the provisions of 42 U.S.C. § 2000(d).

160.    Despite the implied contract between the defendants and me, the
defendants UQ, UQSOM, UQ-Ochsner, McColl, Seoane, and McGhee, violated
the provisions of 42 U.S.C. § 2000(d), when, as individuals and entities, via
individual or coordinated acts, omissions, practices, and ratifications, defendants
acted or conspired in a scheme in which they discriminated against me on the
basis of my national origin in violation of 42 U.S.C. § 2000(d).

161.    I have exhausted all internal grievance procedures, if any, required by the
defendants' policies.

162.    I have been injured as a result of defendants' contractual breaches.

163.    Defendants acted negligently or intentionally, willfully, wantonly, recklessly and with gross negligence in breaching their contractual duties to me.

164.    As a result, any purported contractual exculpatory provisions, or limitations on liability and damages, are not enforceable against me.

165.    As a result of defendants' intentional conduct, I am entitled to punitive damages, in an amount sufficient to punish defendants and to deter others from like conduct.

166.    I am entitled to an award of damages caused by the defendants' breaches of our contract for educational services, in an amount to be proven at trial but which exceeds $300,000.

## COUNT 8 : CONSPIRACY TO DENY CIVIL RIGHTS via 42 U.S.C. § 1985
### (All Group A and All Group B defendants)

167.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

168.    Overt acts comprising at a pattern of behavior at all times relevant to this complaint, defendants and two or more of them, while located variously in Brisbane, Australia, New Orleans, Louisiana, Dallas, Texas, and Las Vegas, Nevada, invidiously discriminated and conspired together to act and to fail to act as hereinbefore alleged, for the purpose of impeding, hindering, obstructing, and defeating the course of my civil protections under Title VI as a FASFA participant.

169.    Defendants, and each of them, purposefully, under color of law, planned and conspired to deny me equal protection of the laws by (a) denying the right to be free from disparate treatment on the basis of my national origin from

recipients of FFA; and (b) denying or ratifying or acting in furtherance of the

denial that I was the victim of disparate treatment on the basis of my national

origin from recipients of FFA.

170.    By virtue of the foregoing, defendants, and each of them, violated 42

U.S.C. § 1985.

171.    As a direct and proximate result of the foregoing, I have been damaged as

recited above and demand and am entitled to damages in an amount to be

proven at trial but which exceeds $300,000, including but not limited to, general

and punitive damages, as allowed under 28 U.S.C. § 2674, and attorney's fees.

### COUNT 9 : NEGLIGENT PREVENTION OF DENIAL OF CIVIL RIGHTS
### via 42 U.S.C. § 1986
### (All Group A and All Group B defendants)

172.    I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

173.    Overt acts comprising at a pattern of behavior at all times relevant to this

complaint, defendants and two or more of them, while located variously in

Brisbane, Australia, New Orleans, Louisiana, Dallas, Texas, and Las Vegas,

Nevada, invidiously discriminated and conspired together to act and to fail to act

as hereinbefore alleged, for the purpose of impeding, hindering, obstructing, and

defeating the course of my civil protections under Title VI as a FASFA participant.

174.    Defendants, and each of them, purposefully, under color of law, planned

and conspired to deny me equal protection of the laws by (a) denying the right to

be free from disparate treatment on the basis of my national origin from

recipients of FFA; and (b) denying or ratifying or acting in furtherance of the

denial that I was the victim of disparate treatment on the basis of my national origin from recipients of FFA.

175.    Defendants, and each of them knew and understood I was being subjected to a deprivation of my constitutional rights and were in the position and had the duty and authority to intervene to prevent the wrongdoing committed against me by defendants.

176.    By virtue of the foregoing, defendants, and each of them, violated 42 U.S.C. § 1986.

177.    As a direct and proximate result of the foregoing, I have been damaged as recited above.

178.    I demand and am entitled to damages in an amount to be proven at trial but which exceeds $300,000, including but not limited to, general and punitive damages, as 28 U.S.C. § 2674 allows, and attorney's fees.

### COUNT 10 : UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983 (All Group A and All Group B defendants)

179.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

180.    Defendant U.S. Department of Education is and at all times herein mentioned has been a public entity and duly authorized and existing as such in and under the United States Code; and at all times herein mentioned, defendant U.S. Department of Education, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the UQ-Ochsner Enterprise and its tactics, methods, practices, customs and usages related to, the provisions of 42 U.S.C. § 2000(d), and Title VI, generally.

181.    At all times herein mentioned, defendants, and each of them, were FFA recipients via the Department of Education, or, employees of said recipient, acting under the U.S. Department of Education's contractual direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourteenth Amendment to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the defendants' non-compliance with 42 U.S.C. § 2000(d).

182.    Defendants knowingly maintain and permit official policies and customs of permitting the occurrence of the kinds of wrongs set forth above.

183.    The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by the defendants include, but are not limited to:

183.1. Defendant U.S. Department of Education knew of UQ-Ochsner's past conduct.  Specifically, U.S. Department of Education knew of UQ-Ochsner's UQ-Ochsner program and its written discriminatory policies and the pattern of practices of discrimination present in its implementation.

183.2. Defendant U.S. Department of Education, had knowledge, prior to, during, and since the events underlying this case, of the behavior of defendants UQ-Ochsner, UQ, Ochsner, and have refused to enforce explicit universally established policies, procedures, and regulations to insure persons similarly situated to myself are not discriminated against on the basis of their national origin.

183.3. Defendants U.S. Department of Education, and McGhee, refused to restrain or discipline co-defendants despite actual knowledge of their discriminatory program policies and pattern of practices.

183.4. Defendants U.S. Department of Education, and McGhee, refused to competently and adequately investigate my allegations of discrimination alleged to have been committed by defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl.

183.5. Defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl have fostered and encouraged an atmosphere of discrimination and unconstitutional conduct, which by my enrollment and at all times relevant to this case, represented the unconstitutional policies practices and customs of the U.S. Department of Education.

183.6. Defendant U.S. Department of Education refused to adequately supervise the actions of defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl regarding defendant U.S. Department of Education's regulations with respect to discrimination on the basis of national origin.

183.7. Defendants UQ-Ochsner, UQ, and Ochsner, refused to adequately train and educate their administrators and key personnel in the use of non-discriminatory practices and procedures mandatory for recipients of FFA and failed to enforce the U.S. Department of Education's written regulations with respect to non-discriminatory practices and procedures.

183.8. Defendant U.S. Department of Education condoned and participated in the practices of co-defendants UQ-Ochsner, UQ, Ochsner, Seoane, and

McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.9. Defendants U.S. Department of Education and McGhee condone and participate in the practices of co-defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.10. Defendants UQ-Ochsner, UQ, and Ochsner, condoned and participated in the practices of co-defendants Seoane and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.11. Defendants UQ-Ochsner, UQ, and Ochsner, now, at present, and at all times relevant to this complaint, continue to condone and participate in the practices of co-defendants Seoane and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs,

made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.12. Defendant U.S. Department of Education condoned and encouraged a conspiracy of inaction, misinformation, and misrepresentation among co-defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.13. Defendant U.S. Department of Education and McGhee condone and encourage a conspiracy of inaction, misinformation, and misrepresentation among co-defendants UQ-Ochsner, UQ, Ochsner, Seoane, and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

183.14. Defendants UQ-Ochsner, UQ, and Ochsner, condone and encourage a conspiracy of inaction, misinformation, and misrepresentation among co-defendants Seoane, and McColl for the purpose of obtaining FFA monies and other benefits accruing from participation in FFA programs, made possible by

defendants' discrimination on the basis of national origin of U.S.-National UQ-Ochsner student-victims who would otherwise have equal opportunity to remain onshore, in Australia, for the balance of their studies.

184.    By reason of the aforesaid policies, customs, practices and usages, my rights under the Fourteenth Amendment to the United States Constitution were deprived. Defendants, and each of them knew and understood I was being subjected to a deprivation of my constitutional rights and were in the position and had the duty and authority to intervene to prevent the wrongdoing committed against me by defendants.

185.    Defendants did not intervene to prevent the wrongdoing committed against me by co-defendants, respectively.

186.    As a direct and proximate result of the foregoing, I have been damaged as recited above.

187.    I demand and am entitled to damages in an amount to be proven at trial but which exceeds $300,000, including but not limited to, general and punitive damages, as 28 U.S.C. § 2674 allows, and attorney's fees.

### COUNT 11 : NONPERFORMANCE OF CONTRACT
### (All Group A defendants)

188.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

189.    At all times relevant to this complaint, a contract or an implied contract or implied contractual agreement exists between myself and each of the defendants named in this cause of action.

190.    Defendants made an agreement with me under which defendants agreed to abide by the provisions of 42 U.S.C. § 2000(d).

191.    Defendants made an agreement with me that if I completed their program, I would be awarded an MBBS, and with it all the privileges and opportunities and financial gains reasonably expected as a doctor and member of the medical profession.

192.    Defendants made an agreement with me under which they promised me they took reasonable steps to comply with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

193.    Defendants made an agreement with me under which they promised me they were in compliance and would comply, at all times, with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

194.    Defendants made an agreement with me under which they promised me they would take reasonable steps to comply with the statutes and regulations mandated upon them via their participation as a DOE FFA program recipient.

195.    The representations, promises, and conduct of defendants were sufficiently specific so that I had a reasonable expectation that defendants would abide by them.

196.    The representations, promises, and conduct of defendants were sufficiently specific so that I had a reasonable expectation that defendants would abide by the provisions of 42 U.S.C. § 2000(d).

197.   Despite the contract between the defendants and me, the defendants

violated the provisions of 42 U.S.C. § 2000(d), and refused to perform their side

of the bargain, when, as individuals and entities, via individual or coordinated

actions, omissions, practices, and ratifications, defendants acted or conspired in

a scheme in which they discriminated against me on the basis of my national

origin in violation of 42 U.S.C. § 2000(d).

198.   I have exhausted all internal grievance procedures, if any, required by the

defendants' policies.

199.   Defendants' actions were negligent or intentional, willful, wanton, and

malicious. Defendants are liable to me for these breaches under both theories of

contract and tort.

200.   As a direct and proximate result of the foregoing, I have been damaged as

recited above.

201.   I demand and am entitled to damages in an amount to be proven at trial

but which exceeds $300,000, including but not limited to, general and punitive

damages, and attorney's fees.

### COUNT 12 : BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (All Group A defendants)

202.   I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

203.   Pursuant to Federal common law, the implied agreement between

defendants and I included an implied covenant of good faith and fair dealing.

204.    Defendants' actions complained of herein were undertaken by defendants in bad faith with deliberate disregard for my contractual rights and thus constitute a breach of the implied covenant of good faith and fair dealing.

205.    Defendants wrongfully and intentionally breached the implied agreement to my detriment.

206.    Defendants' injured my right to receive the benefits of the implied agreement.

207.    Defendants' actions were negligent or intentional, willful, wanton, and malicious. Defendants are liable to me for these breaches under both theories of contract and tort.

208.    As a direct and proximate result of the foregoing, I have been damaged as recited above.

209.    I demand and am entitled to damages in an amount to be proven at trial but which exceeds $300,000, including but not limited to, general and punitive damages, and attorney's fees.

## COUNT 13 : NEGLIGENCE PER SE, or, RES IPSA LOQUITUR, or, NEGLIGENT MISREPRESENTATION
### (All Group A defendants)

210.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

211.    All defendants had a duty to me to exercise due care with respect to abiding by the provisions of 42 U.S.C. § 2000(d) because they are all either entities or agents of entities whose educational or health care programs participate in and benefit from DOE or HHSA FFA.

212.   All defendants fall within the ambit of 42 U.S.C. § 2000(d)'s jurisdiction

and I am empowered by 42 U.S.C. § 2000(d) to pursue this civil recourse.

213.   42 U.S.C. § 2000(d) defines certain of my rights in my contractual

relationship with the defendants because I am among a class of persons who

have been singled out for disparate treatment on the basis of my national origin,

and this is what 42 U.S.C. § 2000(d) was designed to prevent.

214.   The defendants, each and every one of them, participated in these acts of

discrimination on the basis of my national origin in violation of 42 U.S.C. §

2000(d), as described fully described above, and below, herein.

215.   These violations of 42 U.S.C. § 2000(d) by each and every defendant

constitute a breach of each and every defendant's duty to me under 42 U.S.C. §

2000(d) and are by definition negligence as a matter of law.

216.   These violations of 42 U.S.C. § 2000(d) by each and every defendant

constitute a breach of each and every defendant's duty to me under 42 U.S.C. §

2000(d) and are the kind of events which ordinarily to not occur in the absence of

someone's negligence.

217.   These violations of 42 U.S.C. § 2000(d) were caused by instrumentalities

in the exclusive control of the defendants, instrumentalities over which I had no

control and made no voluntary action or contribution which was in any way

responsible for the cause of my injury.

218.   To the extent the defendants persuaded me to sign their educational

services contract, and, to the extent that contract enforced policies and

provisions counter to 42 U.S.C. § 2000(d), I was at all times without capacity to

control whether or not 42 U.S.C. § 2000(d)'s statutorily mandated rights could be bargained or negotiated away from me via the defendants' Faustian contract.

219.    All defendants except McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

219.1. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their contract for education services was in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, it is not, and never was; and

219.2. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their practices and activities pursuant to our contract for education services were in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, they are not, and never were.

220.    Defendant McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

220.1. Defendant misrepresented that it had undertaken a proper pre-investigation analysis to determine whether the co-defendants were compliance with 42 U.S.C. § 2000(d), and to contain and help remedy such breach;

220.2. Defendant misrepresented at the conclusion defendant's so called pre-investigation analysis  that OMG was not a recipient of FFA;

220.3. Defendant misrepresented at the conclusion defendant's so called pre-investigation analysis that OMG was not within the jurisdiction of the Dept. of Education.

220.4. Defendant misrepresented at the conclusion defendant's so called pre-investigation analysis that defendant had undertaken a duly diligent effort to determine whether UQ was a recipient of FFA; and

220.5. Defendant misrepresented at the conclusion defendant's so called pre-investigation analysis that defendant had undertaken a duly diligent effort to determine whether OMG was a recipient (secondary or otherwise) of FFA.

221.    These representations and omissions by all defendants were false and deceptive.

222.    I was ignorant of the falsity of defendants' misrepresentations and omissions.

223.    Defendants' owed me a duty of care to communicate to me truthful information.

224.    Defendants' breached their duty of care to me by failing to exercise such care and by communicating false information to me.

225.    I reasonably relied on defendants' misrepresentations and omissions, to my detriment, by, among other things, engaging defendants to conduct my medical education under the aforementioned contract for educational services based on defendant's assurances, promises, and practices that recommended defendants were in compliance with 42 U.S.C. § 2000(d), even though, in fact, they were not, defendants' misrepresentations for which I have suffered.

226.    I was consequently and proximately injured by defendants' actions and practices, as described above.

227.    The defendants' actions as described above were negligent or intentional and embarked upon with the knowledge of or in conscious disregard of the harm that would be inflicted upon me.

228.    I am entitled to an award of damages caused by defendants' negligence in an amount to be proven at trial but which exceeds $300,000.

229.    As a result of defendants' intentional conduct, I am entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

### COUNT 14 : GROSS NEGLIGENCE
### (All Group A defendants)

230.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

231.    Defendants owed me a duty of care in providing me educational services, and in providing information that was truthful and accurate regarding defendants' compliance with 42 U.S.C. § 2000(d).

232.    Defendants acted recklessly, willfully, wantonly, and without even slight care, in failing to perform the educational services they had represented they would undertake; in asserting that they were acting in compliance with 42 U.S.C. § 2000(d) and their duties therein, when, in fact, defendants either were breaching 42 U.S.C. § 2000(d), or, had not even identified, let alone sought to remediate, defendants' non-compliance with 42 U.S.C. § 2000(d).

233.    The defendants' actions as described above constituted grossly negligent

conduct which consequently and proximately caused my harm.

234.    As a direct and proximate result of the foregoing, I have been damaged as

recited above.

235.    I demand and am entitled to damages in an amount to be proven at trial

but which exceeds $300,000, including but not limited to, general and punitive

damages, and attorney's fees.

236.    As a result of defendants' grossly negligent conduct, I am entitled to

punitive damages in an amount sufficient to punish defendants and to deter

others from like conduct.

### COUNT 15 : RATIFICATION, or, VICARIOUS LIABILITY, or, NEGLIGENT SUPERVISION
### (All Group A defendants)

237.    I hereby incorporate the foregoing statements into the averments of this

cause of action as if repeated hereinafter verbatim.

238.    UQ-Ochsner was a partner or sub-contractor of UQ tasked with providing

educational services in the form of clinical medical education. ·

239.    At the time of the series and pattern of activities and practices giving rise

to this cause there was an actual or assumed agency relationship between UQ,

Ochsner, UQ-Ochsner, the DOE, and the employees thereof.

240.    Despite knowledge by all defendants, each and every one, of defendant

UQ-Ochsner's discriminatory misconduct via its ongoing operational activities

and practices and their participation in this or tacit approval via inaction, no steps

were taken to determine UQ-Ochsner's DOE FFA compliance, steps which could

have been taken to determine UQ-Ochsner's DOE FFA compliance were avoided, no whistleblowing or disciplinary action occurred and no self-corrective or self-remedying steps were taken.

241.    All defendants are thus responsible for UQ-Ochsner's acts of discrimination on the basis of national origin.

242.    I was consequently and proximately injured by defendants' actions and practices, as described above.

243.    The defendants' actions as described above were negligent or intentional and embarked upon with the knowledge of or in conscious disregard of the harm that would be inflicted upon me.

244.    I am entitled to an award of damages caused by defendants' negligence in an amount to be proven at trial but which exceeds $300,000.

245.    As a result of defendants' intentional conduct, I am entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

246.    I am entitled to nominal damages, if I so choose.

### COUNT 16 : DECEPTIVE TRADE PRACTICES
### via N.R.S. § 598.0955(b), et. seq.
### (All Group A defendants)

247.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

248.    NRS § 598.0923(2) provides that a person engages in a deceptive trade practice when, in the course of his business or occupation, he knowingly fails to disclose a material fact in connection with the sale or lease of goods or services.

249.   NRS § 598.0915(15) provides that a person engages in a deceptive trade practice when, in the course of his business or occupation, he knowingly makes a false representation in a transaction.

250.   NRS § 598.0915(5) provides that person engages in a deceptive trade practice when, in the course of his business or occupation, he knowingly makes a false representation as to the characteristics of services.

251.   All defendants named under this cause of action engaged in the business of providing educational services, and purported to do so while providing information that was truthful and accurate regarding defendants' compliance with 42 U.S.C. § 2000(d).

252.   All defendants named under this cause of action intentionally engaged in the business of providing educational services, and purported to do so while providing information that was truthful and accurate regarding defendants' compliance with 42 U.S.C. § 2000(d), all while knowing that their purported behavior was not truthful and accurate regarding defendants' compliance with 42 U.S.C. § 2000(d).

253.   All defendants named under this cause of action, except McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

253.1. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their contract for education services was in compliance

with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, it is not, and never was; and

253.2. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their practices and activities pursuant to our contract for education services were in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, they are not, and never were.

253.3. I reasonably relied on defendants' misrepresentations and omissions, to my detriment, by, among other things, engaging defendants to conduct my medical education under the aforementioned contract for educational services based on defendant's assurances, promises, and practices that recommended defendants were in compliance with 42 U.S.C. § 2000(d), even though, in fact, they were not, defendants' misrepresentations for which I have suffered.

254.    Defendant McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

254.1. Defendant misrepresented having undertaken a proper pre-investigation analysis to determine whether the co-defendants were compliance with 42 U.S.C. § 2000(d), and to contain and help remedy such breach;

254.2. Defendant misrepresented at the conclusion of defendant's so called pre-investigation analysis that OMG was not a recipient of FFA;

254.3. Defendant misrepresented at the conclusion defendant's so called pre-investigation analysis that OMG was not within the jurisdiction of the Dept. of Education.

254.4. Defendant misrepresented at the conclusion of defendant's so called pre-investigation analysis that defendant had undertaken a duly diligent effort to determine whether UQ was a recipient of FFA; and

254.5. Defendant misrepresented at the conclusion of defendant's so called pre-investigation analysis that defendant had undertaken a duly diligent effort to determine whether OMG was a recipient (secondary or otherwise) of FFA.

255.    As to all defendants named under this cause of action:

255.1. These representations and omissions were false and deceptive.

255.2. I was ignorant of the falsity of defendants' misrepresentations and omissions.

255.3. Defendants' owed me a duty of care to communicate to me truthful information.

255.4. Defendants' breached their duty of care to me by failing to exercise such care and by communicating false information to me.

256.    Violations of NRS Chapter 598 are actionable under NRS § 41.600 by any person (including a corporation) who is a victim of consumer fraud. NRS § 41.600(2)(e) defines consumer fraud to include deceptive trade practices as defined in NRS §§ 598.0915 to 598.0925, inclusive.

257.    NRS § 41.600(3) provides that if the claimant is the prevailing party in an action brought for consumer fraud, then "the court shall award the claimant:

257.1. (a) any damages that the claimant has sustained;

257.2. (b) any equitable relief that the court deems appropriate; and

257.3. (c) the claimant's costs in the action and reasonable attorney's fees."

258.    I was consequently and proximately injured by defendants' actions and practices, as described above.

259.    The defendants' actions as described above were intentional and embarked upon with the knowledge of or in conscious disregard of the harm that would be inflicted upon me.

260.    Therefore I am entitled to recover damages in an amount to be proven at trial but which exceeds $300,000, any equitable relief the court deems appropriate, and an award of my costs and reasonable attorneys' fees, as a result of defendant's deceptive trade practices.

261.    As a result of defendants' intentional conduct, I am also entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

262.    I am entitled to punitive and exemplary damages equal to three times my compensatory damages pursuant to NRS § 42.005, by virtue of the defendants' knowing failure to disclose a material fact in connection with the sale and non-enforcement of certain provisions of their educational services contract.

## COUNT 17 : FRAUDULENT INDUCEMENT, or, FRAUDULENT PROMISE
### (All Group A defendants)

263.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

264.    Prior to contracting for educational services with the defendants, and with the intent to induce me to enter into a contract with defendants, defendants made the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

265.    All defendants represented that they were engaged in the business or regulation of educational services and all defendants purported to do so, in part, by providing the best reasonably available information to me that was truthful and accurate regarding defendants' compliance with 42 U.S.C. § 2000(d).

266.    All defendants except McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

266.1. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their contract for education services was in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, it is not, and never was; and

266.2. Defendants misrepresented and omitted, at all times relevant to this legal action, stating their practices and activities pursuant to our contract for education services were in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, they are not, and never were.

267.    Defendant McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

267.1. Defendant misrepresented that he had undertaken a proper pre-investigation analysis to determine whether the co-defendants were in compliance with 42 U.S.C. § 2000(d);

267.2. Defendant misrepresented at the conclusion his so called pre-investigation analysis that OMG was not a recipient of FFA;

267.3. Defendant misrepresented at the conclusion his so called pre-investigation analysis that OMG was not within the jurisdiction of the Dept. of Education.

267.4. Defendant misrepresented at the conclusion his so called pre-investigation analysis that he had undertaken a duly diligent effort to determine whether UQ was a recipient of FFA; and

267.5. Defendant misrepresented at the conclusion his so called pre-investigation analysis that he had undertaken a duly diligent effort to determine whether OMG was a recipient (secondary or otherwise) of FFA.

268.    These representations and omissions by all defendants were false and deceptive.

269.    The defendants owed me a duty of care to communicate to me truthful information.

270.    The defendants made these misrepresentations and omissions with knowledge of, or at least in reckless disregard of, their falsity.

271.    I was ignorant of the falsity of the defendants' misrepresentations and omissions.

272.    Defendants intended for me to rely on these misrepresentations and omissions, in order to induce me to contract or continue to abide under the terms of my contract with them.

273.    I reasonably relied on the defendants' misrepresentations and omissions, to my detriment, by, among other things, engaging defendants to conduct my medical education under the aforementioned contract for educational services based on assurances, promises, and practices that reasonably communicated that the defendants were in compliance with 42 U.S.C. § 2000(d), even though, in fact, the defendants were not in compliance.

274.    I was consequently and proximately injured by defendants' actions and practices, as described above.

275.    The defendants' actions as described above were intentional and embarked upon with the knowledge of or in conscious disregard of the harm that would be inflicted upon me.

276.    Therefore I am entitled to recover damages in an amount to be proven at trial but which exceeds $300,000, any equitable relief the court deems appropriate, and an award of my costs and reasonable attorneys' fees.

277.    As a result of defendants' intentional conduct, I am also entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

## COUNT 18 : CONSTRUCTIVE FRAUD, or, EQUITABLE FRAUD, or, FRAUDULENT CONCEALMENT, or, FRADULENT MISREPRESENTATION
### (All Group A defendants)

278.   I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

279.   In the circumstances alleged above, defendants had a special relationship with me.

280.   In particular, defendants had a duty to deal fairly with me because:

280.1. Defendant claimed to possess specialized knowledge, experience and qualifications regarding graduate clinical medical educational services and the provision of such in compliance with 42 U.S.C. § 2000(d);

280.2. Such specialized knowledge, experience and qualifications put defendant in a position of superiority over me;

280.3. Defendant knew that I needed to rely and did rely on defendant's claimed specialized knowledge, experience and qualifications, and on information supplied by defendant, in making decisions on engaging defendants to conduct my medical education under the aforementioned contract for educational services based on defendant's assurances, promises, and practices that recommended defendants were in compliance with 42 U.S.C. § 2000(d), even though, in fact, the defendant was not in compliance.

280.4. The defendant knows or reasonably should have known I believed that the defendant had in fact performed these services in compliance with 42 U.S.C. § 2000(d).

281.   Because I was not able to detect the falsity and incompleteness of the information supplied by defendant:

281.1. I was uniquely vulnerable to injury if defendant did not supply truthful and accurate information; and

281.2. Defendant stood to gain at my expense, if defendant did not supply truthful and accurate information.

282.    Defendants breached their duty to deal fairly with me by making at least the following material misrepresentations and omissions of material information regarding prior or then-existing statements of fact:

283.    All of the defendants claimed to be engaged in the business of providing educational services, which involved, in part, dispensing truthful and accurate information regarding their compliance with 42 U.S.C. § 2000(d).

284.    All defendants except McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

284.1. Defendants misrepresented and omitted, at all times relevant to this legal action, by stating their contract for education services was in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, it is not, and never was.

284.2. Defendants misrepresented and omitted, at all times relevant to this legal action, by stating their practices and activities pursuant to our contract for education services were in compliance with 42 U.S.C. § 2000(d), when, in fact, as a matter of law, they are not, and never were.

285.    Defendant McGhee, individually, made at least the following material misrepresentations and omissions of material information to me regarding prior or then-existing statements of fact:

285.1. Defendant misrepresented that he had undertaken a proper pre-investigation analysis to determine whether the co-defendants were in compliance with 42 U.S.C. § 2000(d);

285.2. Defendant misrepresented at the conclusion his so called pre-investigation analysis that OMG was not a recipient of FFA;

285.3. Defendant misrepresented at the conclusion his so called pre-investigation analysis that OMG was not within the jurisdiction of the Dept. of Education.

285.4. Defendant misrepresented at the conclusion his so called pre-investigation analysis that he had undertaken a duly diligent effort to determine whether UQ was a recipient of FFA; and

285.5. Defendant misrepresented at the conclusion his so called pre-investigation analysis  that he had undertaken a duly diligent effort to determine whether OMG was a recipient (secondary or otherwise) of FFA.

286.    All defendants made these misrepresentations and omissions with knowledge of, or at least in reckless disregard of, their falsity.

287.    Either my student loan debt lenders and/or myself were ignorant of the falsity of defendants' misrepresentations and omissions.

288.    Through misrepresentations and omissions, defendants gained a benefit at my expense, because, among other things, the defendants convinced me to

pay UQ-Ochsner for educational services, by representing to me that UQ-Ochsner was, and is, in compliance with 42 U.S.C. § 2000(d).

289.    Defendants intended for me to rely on their misrepresentations and omissions, in order to induce me to contract or continue to abide under the terms of my contract with defendants.

290.    I reasonably relied on the defendants' misrepresentations and omissions, to my detriment, by, among other things, engaging defendants to conduct my medical education under the aforementioned contract for educational services based on the assurances, promises, and practices they represented to me as being in compliance with 42 U.S.C. § 2000(d) even though they were not — misrepresentations and omissions for which I have suffered.

291.    I was consequently and proximately injured by defendants' misrepresentations and omissions.

292.    Therefore I am entitled to recover the damages I have sustained (which exceed $300,000), any equitable relief the court deems appropriate, and an award of my costs and reasonable attorneys' fees.

293.    I am also is entitled to punitive damages.

### COUNT 19 : RICO via 18 U.S.C. § 1962(C), or, NRS § § 207.400, 207.470(1) (All Group A defendants)

294.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

295.    Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) who conducted the affairs of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

296.    The UQ-Ochsner Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (i) defendants, including their employees and agents; (ii) the UQ-Ochsner Participants, and other unnamed co-conspirators as set forth supra. The UQ-Ochsner Enterprise is an ongoing organization that functions as a continuing unit. The UQ-Ochsner Enterprise was created and used as a tool to effectuate defendants' pattern of racketeering activity. The defendant "persons" are distinct from the UQ-Ochsner Enterprise.

297.    The UQ-Ochsner Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) misleading UQ-Ochsner's victims and the media to prevent the reporting, disclosure, or prosecution of UQ-Ochsner's discriminatory misconduct

298.    Defendants have conducted and participated in the affairs of the UQ-Ochsner Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes multiple instances of mail and wire fraud as described below.

299.    The UQ-Ochsner Enterprise engaged in and affected interstate commerce, because, inter alia, UQ-Ochsner, contracted and enlisted services of U.S. Government Agencies and banking interests and multi-state hospitals as well as published a website and conducted multi-state, multi-national advertising to lure UQ-Ochsner's victims.

300.    Defendants exerted control over the UQ-Ochsner Enterprise, and defendants participated in the operation or management of the affairs of the UQ-Ochsner Enterprise.

301.    Within the UQ-Ochsner Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The UQ-Ochsner Enterprise used this common communication network for the purpose of enabling UQ-Ochsner's activities.

302.    Each participant in the UQ-Ochsner Enterprise had a systematic linkage to each other participant through corporate ties, contractual relationships, financial ties, and the continuing coordination of their activities. Through the UQ-Ochsner Enterprise, the defendants and their co-conspirators functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes.

303.    The RICO defendants used the mails and wires for the transmission, delivery, or shipment of the following by the RICO defendants or third parties that were foreseeably caused to be sent as a result of defendants' illegal scheme: (a) Contracts between UQ-Ochsner and the Participants; (b) Wires, mails, and emails among the general public about UQ-Ochsner's misconduct; (c) Wires, mails, and emails between the Participants on the subject of UQ Ochsner's activities and victims.

304.    The RICO defendants utilized the interstate and mail and wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein.

305.    The RICO defendants also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.

306.    The RICO defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, and other third-party entities in furtherance of the scheme.

307.    The mail and wire transmissions described herein were made in furtherance of defendants' scheme and common course of conduct to deceive the public about UQ-Ochsner's activities.

308.    To achieve their common goals, the RICO defendants hid, in plain site, from the general public the unlawfulness of UQ-Ochsner's conduct via their authority and positions of authority and continued authorization of UQ-Ochsner's ongoing activities.

309.    Defendants' scheme and the above described racketeering activities amounted to a common course of conduct intended to cause myself and others to hide and conceal UQ-Ochsner's conduct. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including myself.

310.    Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to my property.

311.    The pattern of racketeering activity alleged herein and UQ-Ochsner are separate and distinct from each other.  defendants engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the UQ-Ochsner Enterprise.

312.    I have been injured in my property by reason of these violations.

defendants interfered with my contractual and prospective contractual relations,

because I lost employment/education and employment/educational opportunities,

as well contracts and contractual opportunities, as a result of UQ-Ochsner's

conduct.

313.    Had members of the UQ-Ochsner Enterprise not been complicit and had

they treated me equally instead of engaged discriminatory and predatory

behaviors, I would not have been injured.

314.    Thus, my injuries were directly and proximately caused by defendants'

racketeering activity, as described above.

315.    The practices and activities comprising defendants' violation of this COA

occurred within the past ten years.

316.    I hereby reallege each and every statement within this nineteenth cause of

action under NRS § § 207.400, and 207.470(1) rather than 18 U.S.C. § 1962(c),

as if repeated hereinafter verbatim, and, now further allege that the practices and

activities comprising defendants' violation of this COA occurred within the past

five years.

317.    I was consequently and proximately injured by defendants' actions and

practices, as described above.

318.    The defendants' actions as described above were intentional and

embarked upon with the knowledge of or in conscious disregard of the harm that

would be inflicted upon me.

319.   Therefore I am entitled to recover damages in an amount to be proven at trial but which exceeds $300,000, any equitable relief the court deems appropriate, and an award of my costs and reasonable attorneys' fees.

320.   As a result of defendants' intentional conduct, I am also entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

321.   By virtue of these violations of 18 U.S.C. § 1962(c), or, NRS § § 207.400, and 207.470(1), defendants are liable to me for three times the damages I have sustained, plus the cost of this suit, including reasonable attorneys' fees.

**COUNT 20 : CIVIL CONSPIRACY via CONCERT OF ACTION, or, CONSPIRACY via 18 U.S.C. § 1962(D) by conspiring under 18 U.S.C. § 1962(C) (All Group A defendants)**

322.   I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

323.   Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

324.   Defendants have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Enterprise described previously through a pattern of racketeering activity.

325.   As demonstrated in detail above, defendants' co-conspirators, including, but not limited to, the UQ-Ochsner Participants, have engaged in numerous overt

and predicate fraudulent racketeering acts in furtherance of the conspiracy,
including multiple instances of fraud and misrepresentation.

326.    The nature of the above-described actions of the defendants and co-
conspirators in furtherance of the conspiracy gives rise to an inference that they
not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by
conspiring to violate 18 U.S.C. § 1962(c) but also were aware that their ongoing
fraudulent acts have been and are part of an overall pattern of racketeering
activity. At all relevant times, all defendant and all defendants' co-conspirators
were aware of the essential nature and scope of the UQ-Ochsner Enterprise and
intended to participate in it.

327.    As a direct and proximate result of defendants' overt acts and predicate
acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18
U.S.C. § 1962(c), I have been and continue to be injured in my property, as set
forth more fully above.

328.    Defendants have sought to and have engaged in the violations of the
above federal laws and the effects thereof detailed above are continuing and will
continue unless injunctive relief prohibiting defendants' illegal acts constituting a
pattern of racketeering activity is fashioned and imposed by the court.

329.    I was consequently and proximately injured by defendants' actions and
practices, as described above.

330.    The defendants' actions as described above were intentional and
embarked upon with the knowledge of or in conscious disregard of the harm that
would be inflicted upon me.

331.    Therefore I am entitled to recover damages in an amount to be proven at trial but which exceeds $300,000, any equitable relief the court deems appropriate, and an award of my costs and reasonable attorneys' fees.

332.    As a result of defendants' intentional conduct, I am also entitled to punitive damages in an amount sufficient to punish defendants and to deter others from like conduct.

### COUNT 21 : DEFAMATION
### (All Group A defendants)

333.    I hereby incorporate the foregoing statements into the averments of this cause of action as if repeated hereinafter verbatim.

334.    At all times relevant to this legal action, defendants have published or participated in publishing official written statements, released by defendants to the Department of Education and other academic reporting entities with the intent that they be widely disseminated and repeated throughout Nevada, across the country, and the world.

335.    Defendants' published statements, as above, to the extent they misrepresent me and my academic performance by excluding key material facts, such as the defendants' noncompliance with 42 U.S.C. § 2000(d) and the effects thereof on the statements they have published about me, are false.

336.    It is reasonably understood by those who read or hear these statements about me that the defendants' defamatory statements are about me.

337.    Both on its face, and because of the facts and circumstances known to persons read these statements, it is reasonably understood defendants' mean to convey that I would underperform or fail to perform to a certain academic

standard if given the opportunity to participate in a program similar to the defendants' program, but one which did comply with 42 U.S.C. § 2000(d). defendants' statements have thus exposed me to shame, and discouraged others similarly situated to the defendants from associating or dealing with me.

338.    Insofar as defendants' defamatory statements convey that I would underperform or fail to perform to a certain academic standard if given the opportunity to participate in a program similar to the defendants' program, but one which did comply with 42 U.S.C. § 2000(d), the defendants' statements are false.

339.    Defendants have made these statements knowing them to be false or should reasonably have had serious doubts about the truth of the statements.

340.    As a result, I have suffered damages in an amount to be proven at trial according to proof, including but not limited to, harm to my reputation, shame, emotional harm, and by discouraging others similarly situated to the defendants from associating or dealing with me.

341.    The official gist of the defendants' statements, insofar as they convey that I would underperform or fail to perform to a certain academic standard if given the opportunity to participate in a program similar to the defendants' program, but one which did comply with 42 U.S.C. § 2000(d), is false and defamatory.

342.    The factual statements alleged to support the false and defamatory gist, insofar as they convey that I would underperform or fail to perform to a certain academic standard if given the opportunity to participate in a program similar to

the defendants' program, but one which did comply with 42 U.S.C. § 2000(d), are false and defamatory.

343.   Defendants published these false accusations and false gist with actual malice.

344.   At the time of publication, defendants had actual knowledge that the statements, insofar as they convey that I would underperform or fail to perform to a certain academic standard if given the opportunity to participate in a program similar to the defendants' program, but one which did comply with 42 U.S.C. § 2000(d), were false.

345.    As a result of defendants' conduct, I have incurred fees and costs for the protection of my interests.

346.   Defendants published these statements with a reckless disregard for the truth.

347.   In publishing these statements, insofar as they convey that I would underperform or fail to perform to a certain academic standard if given the opportunity to participate in a program similar to the defendants' program, but one which did comply with 42 U.S.C. § 2000(d), the defendants knowingly and intentionally misrepresented the truth and manufactured false information out of whole cloth.

348.   In publishing these statements, the defendants purposefully avoided the truth by failing to disclose that they were engaged in an academic services program which failed to comply with 42 U.S.C. § 2000(d).

349.   The defendants' published false statements constitute libel per se in that they tend to injure me in my trade, business, or profession in that they accuse me of inability to perform in my  profession.

350.   My damages are presumed by law since the defamation is per se.

351.   Defendants published these false and defamatory statements with constitutional malice, intending to cast me in a poor light while hiding their role and the role of their failure to comply with 42 U.S.C. § 2000(d) in my performance, thereby entitling me to an award of punitive damages.

352.   Defendants' conduct was willful and demonstrates that entire want of care that raises a conscious indifference to consequences.

353.   I am further entitled to an award of punitive damages to punish defendants for their unlawful conduct in violation of 42 U.S.C. § 2000(d) and to deter others from repeating such misconduct in the future.

354.   In making the defamatory statements identified above, defendants acted with malice, oppression, or fraud, and are thus responsible for punitive damages in an amount to be proven at trial.

355.   Punitive damages arising from defendants' defamation against me shall be awarded without limit, uncapped, under the laws of the State of Nevada.

## PRAYER FOR RELIEF

WHEREFORE, I pray for judgment as follows:

1.    Enter declaratory judgment in my favor on count 1 against all defendants;

2.    Enter judgment in my favor on all counts, respectively;

3.    Enter judgment against each and every defendant captioned under each and every count, respectively;

4.    Enter judgment against each and every defendant captioned under each and every count on liability on each and every count, respectively;

5.    Enter judgment in my favor finding that by virtue of the Group A defendants' violations, the Group A defendants are liable to me for three times the damages I have sustained, plus the cost of this suit, including reasonable attorneys' fees;

6.    In damage proceedings and prove-ups, award me damages for all real and economic damages, and all other compensatory damages against all defendants, as captioned under each and every count, respectively;

7.    In damage proceedings and prove-ups, award me punitive damages against all Group A defendants in an amount sufficient to punish all Group A defendants and deter others from like conduct;

8.    In damage proceedings and prove-ups, award me uncapped defamatory punitive damages against all Group A defendants in an amount sufficient to punish all Group A defendants and deter others from like conduct;

9.    Prejudgment interest;

10.    Attorneys' fees and costs, if any;

11.    Such other and further relief as this court deems just and proper.

**I declare under penalty of perjury under the laws of the State of Nevada, that I have read the above statement and I know it is true of my own knowledge, except as to those things stated upon information and belief, and as to those I believe it to be true.**

Executed _MONDAY, NOVEMBER 5TH, 2018_, at Las Vegas, Nevada.

Frederick H. Shull, Jr., declarant

CASE # 2:18-cv-01781-APG-PAL before the
U.S. District Court for the District of Nevada
and filed with the Office of the Clerk
333 Las Vegas Boulevard, South, Rm #1334
Las Vegas, NV 89101

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

## AFFIDAVIT

### IN SUPPORT OF COMPLAINT

1.    I hereby incorporate the foregoing complaint, as above, by reference, herein, as if repeated herein verbatim.

2.    I hereby incorporate statement 1, above, by reference, herein, and, all documents referenced within the complaint, and, all documents and evidence referenced within those referenced documents, if any, as if repeated herein verbatim.

3.    I hereby incorporate by reference statement 1 and statement 2, above, and make the following declaration:

> **I declare under penalty of perjury under the laws of the State of Nevada, that I have read the above statement and I know it is true of my own knowledge, except as to those things stated upon information and belief, and as to those I believe it to be true.**

Executed MONDAY, November 5TH, 2018,

at Las Vegas, Nevada.

Frederick H. Shull, Jr., declarant
10697 W Centennial Parkway, APT#1079
Las Vegas, NV 89166
Phone: (702) 954-0565
Voicemail: (504) 814-0275
Email: Derick.Shull@gmail.com